No. 3392

Second Circuit

BURSON v. THE OHIO OIL CO.

(November 8, 1928. Opinion and Decree.)
(December 19, 1928. Rehearing Refused.)

Thomas W. Robertson, Vernis Morgan and John Gibbs, of Shreveport, attorneys for plaintiff, appellee.

R. L. Benoit, of Shreveport, attorney for defendant, appellant.

ODOM, J. The plaintiff brings this suit under the Workmen's Compensation Law, alleging that he was employed by the defendant company, at $4.75 per day, as a common laborer, to do work around an oil well rig, and that on January 31, 1926, while at work, he slipped and fell, and that as a result of the fall, he received injuries to his back which have rendered

him totally and permanently disabled to do work of a reasonable character, and he asks to be paid compensation for 400 weeks. The defendant, in answer, denied any liability whatever to the plaintiff and specifically alleged that, while the plaintiff was in its employ, he sustained no accident or injury which disabled him and that if plaintiff is now, or has at any time, suffered any physical injury by accident which has incapacitated him, such injury and disability arose from causes entirely foreign and disconnected with such employment.

The lower court awarded the plaintiff compensation at $20.00 per week for 300 weeks. From this judgment, the defendant has appealed and the plaintiff moved in this court to increase the period over which compensation is to be paid from 300 to 400 weeks.

## OPINION

The plaintiff, as a witness in his own behalf, testified that while at work for the defendant company, he slipped and fell to the floor and that something hit him on the small of the back, which caused him great pain and suffering and which resulted in permanent disability. He testified that he fell about 9:30 or 10 o'clock in the morning, but that he continued to work during that day; and that on the following morning he did not return to his · work because he was unable to do so. He testified that he was attended by Dr. Dennis, a physician employed by the defendant company, and that, after about five or six days, Dr. Dennis discharged him as cured and advised him to return to work, which he did. Plaintiff further testified that he was for a considerable period under the treatment of Dr. Worley, but he does not state the nature of the affliction for which Dr. Worley treated him, but we assume that he intended to convey the impression that he was treated for the injury which he claims to have received while at work on January 31st. Plaintiff further testified that after some five or six days, subsequent to the time he fell, he did return to work for the defendant company, and that he continued to work until about July 22nd, or a period of something like five and a half months, and that after he quit work for the defendant company, he sought and obtained work with the Standard Pipe Line Company and the Standard Oil Company, and that he did some work for a man by the name of Haynes at a blacksmith shop, and that, later on, he sought and obtained work from the defendant company, working the last time about three weeks on an oil well in the vicinity of Cotton Valley. He testified further, however, that during all of this time he did only light work, that he was not able to do heavy work, and that the parties who employed him let him do such light work as he was able to do. His wife testified that after his fall on January 31st, he constantly complained that his back gave him pain and that he was not, in fact, able to do ordinary manual labor. In the year 1927, plaintiff farmed, and introduced testimony to the effect that while he could do some work on the farm he was not able to work regularly.

The plaintiff called Dr. Guy A. Caldwell, an eminent specialist, as a witness in his behalf. Dr. Caldwell testified that he examined plaintiff on the day before the trial, which took place on December 20, 1927, almost two years after the alleged accident. Dr. Caldwell testified that he found the plaintiff suffering from a "chronic strain of the sacro-illiac joint," which condition incapacitated plaintiff from doing any heavy, manual labor at the time he examined him. Dr. Caldwell further

testified that it was impossible for him to state when or under what circumstances the plaintiff had been injured, but stated that such injuries were ordinarily caused by lifting heavy weights from the floor or ground while in a stooping position, or if in an upright position, supporting a heavy weight, to have a mis-step or movement "which throws the strain on one side or the other with the weight of the body at the same time." Dr. Caldwell was asked whether or not it is possible for a man to do light work after having sustained a sacro-illiac strain, and he stated that it is possible; and he was then asked:

"Q. Also plausible to conclude that it would eventually incapacitate him?" and he answered:
"A. Yes, he can be eventually incapacitated with a chronic strain even after he has been doing work, light work."

The Doctor was asked if, from his examination of plaintiff, he could form any conclusion as to how long his presen condition had lasted, and he stated:

"A. None whatever."

The plaintiff testified that while he did work for the defendant company, and for other persons, until sometime about the month of November, yet he did not work regularly and did only light work, and that he had constantly complained of his disability. But his testimony to the effect that he did not work regularly and that he did complain of the condition of his back is emphatically contradicted by at least six witnesses who either saw him at work or worked with him. The testimony conclusively shows that plaintiff returned to work for the defendant company not later than nine days of February, and that he worked regularly and continuously for that company until July 22nd, at the same rate of pay. The records show that he drew as wages from the defendant company $924.00, after the alleged accident, said amounts being paid to him as follows:

He was paid $139.50, representing 29 days' labor, in February; $103.50, representing 22 days' labor, in March; $139.50, representing 29 days' labor, in April; $135.00, representing 28 days' labor, in May; $139.00, representing 29 days' labor, in June; and $100.50, representing 21 days' labor, in July; and that on July 22nd, he was discharged by the defendant company because it had no further work for him at that time. The testimony further shows that in the month of October, he returned to work for the defendant company and worked three weeks, at the same rate of pay, assisting in the drilling of another well. It is further shown that in the month of August, after having been discharged by the defendant company, he worked for several days for the Standard Pipe Line Company, and, later on, did some work in a blacksmith shop; and one witness says that he saw him shoeing horses, but plaintiff denies that he did that kind of work. The testimony of other witnesses who, either saw the plaintiff at work or who worked with him, is that he did heavy, manual labor during the entire time from the early part of February until the month of November, such work as is ordinarily done by common laborers in oil fields; that he assisted in ditching, "pulling pipe," laying and taking up pipe lines, clearing rights-of-way, etc., and further, that plaintiff did this work without making a complaint either to his employers or in the presence or hearing of any of those with whom he worked. The only complaint which any witness ever heard him make was to Mr. Chastain, who said that he heard the

plaintiff state on one occasion that he was troubled with hemorrhoids and was not able to do heavy lifting on that account.

At the time the defendant company re-employed the plaintiff as an oil field worker in October, 1926, it required of the plaintiff, as well as all other employees, to make a written statement as to his then physical condition. We find in the record a statement signed by the plaintiff on October 19th. In this statement, he was asked what serious sickness he had had, or what injuries he had ever sustained, and he answered, "none." That medical examination was given plaintiff by Dr. J. M. Dennis, who certified to the company that he found the plaintiff in good physical condition and able to do manual labor. Plaintiff's statement, it may be said, was made for the purpose of obtaining employment from the defendant company. We therefore have this situation; the plaintiff, after receiving the fall which he now claims permanently disabled him, worked for the same company and other parties for approximately ten months, his work being almost continuous and of the same kind that he had been accustomed to doing, and at the same rate of pay, and, during all that time, not a complaint was ever made to any of his employers or to anyone with whom he was working.

The following interrogatory which the Judge of the District Court propounded to Dr. Caldwell reveals the situation as viewed by the District Judge before whom the case was tried:

"Q. I will restate the question now—say a man has sustained an accident, falls on December—on January 31st, 1926—he continues working that day and for the following two days we will say—on February 3 he complains of having been injured by the fall, is treated by a physician for the following days, up to February 9, when he is discharged by the physician as cured—he then takes up his duties the same as he performed before the accident and continues them say through the month of July without complaint to his co-workers, after which time he is laid off by the company and re-employed in October of the same year and continues working throughout October and a part of November performing the same labor as he performed prior to the accident without complaint to his co-workers, then we will assume you find the man in the condition in which you find this man to-day physically, would you attribute the condition to the accident which occurred on January 31, 1926, or would you be more likely to attribute it to some other cause which you have no knowledge of?"

Dr. Caldwell was not able to trace plaintiff's present condition to the accident, but, in answer to the above question propounded by the Court, he said as follows:

"A. I would feel like the immediate condition is an acute one that is either an exacerbation of the original condition or that an entirely different injury has occurred in the meantime, would be forced to one of the two conclusions."

In view of the undisputed facts detailed in the record, we think it cannot be reasonably held that the fall which the plaintiff received on January 31, 1926, produced the condition which Dr. Caldwell found in December, 1927. Dr. Caldwell says that with a strain of the sacro-illiac joint, with which he found the plaintiff to be suffering at the time that he examined him, he was unable to do heavy manual labor. The testimony shows, beyond question, that plaintiff did the heaviest kind of manual labor continuously, or almost so, for nearly ten months after the fall, and this testimony, taken in connection with his written statement, made in October, 1926, that he had had no previous injury; and, in view of the fact that plaintiff filed his suit only a day or two previous to the

expiration of one year, makes the conclusion irresistible that the injury which produced his present condition was received subsequent to the date on which he says he received it. If the testimony showed that after January 31st, the plaintiff had intermittent periods of disability or that he ever made any complaint, a different situation would be presented.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from be reversed, and it is now ordered that plaintiff's demands be rejected and his suit dismissed at his cost in both courts.